IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TATYANA SHERMAN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:08-CV-2112-N-BH |
| § | |
| DALLAS COUNTY COMMUNITY § | |
| COLLEGE DISTRICT, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this case was referred for pretrial management, including the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendation on dispositive motions. Before the Court is *Defendant's Motion for Summary Judgment*, filed March 19, 2010, (doc. 64). Based on the relevant filings, evidence, and applicable law, Defendant's motion should be **GRANTED** with respect to all of Plaintiff's claims.

**I. BACKGROUND**[1]

On November 11, 2008, Plaintiff Tatyana Sherman ("Plaintiff"), a Jewish female of Ukrainian origin, filed this lawsuit against the Dallas County Community College District ("DCCCD"), alleging national origin and religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Texas Labor Code, and intentional infliction of emotional distress.

Plaintiff was initially hired by DCCCD in August of 2000 as an adjunct faculty member at

---

[1] The factual background is mostly taken from the appendix attached to Defendant's motion for summary judgment. ("D. App.").

1

Brookhaven College, where she served until June of 2004. (D. App. p. 1). In January 2005, Plaintiff was rehired by DCCCD as an adjunct faculty member at Richland College to teach continuing-education classes. *Id.* Throughout her employment with DCCCD, Plaintiff has remained an adjunct faculty member. (*Id.* at 3).

DCCCD typically hires five different kinds of employees: full-time faculty; part-time or adjunct faculty; full-time professional support staff; part-time professional support staff; and administrators. (D. App. p. 2). The faculty teaches both credit and non-credit courses. *Id.* Credit courses are classes in which college credit is earned towards a certificate or associate degree, or for transfer into a four-year college or university degree program. *Id.* Non-credit courses are not for college credit and provide unique educational opportunities for personal enrichment. *Id.* They include courses offered through the Continuing Education and Workforce Training programs. *Id.* Faculty teaching in the credit programs may be full-time or adjunct depending on the number of hours taught per week. *Id.* Adjunct faculty members teaching credit courses are limited to teaching two courses per sixteen week semester, and may teach up to 49% of a full-time instructor's workload. (D. App. pp. 3, 5). Individuals teaching non-credit courses, such as continuing education and workforce development courses, are hired at will to fulfill assignments based on demand for courses. (D. App. p. 2). Because of the market-driven nature of their assignments, such individuals are classified as adjunct faculty regardless of the number of hours they teach per week. *Id.* However, depending on the number of hours they teach per week, adjunct faculty members teaching non-credit courses can earn significantly higher incomes than adjunct faculty members teaching credit courses. (D. App. p. 3). Non-credit courses do not count towards full-time employment status. (D. App. pp. 2-3).

DCCCD provides access to health insurance and retirement benefits to all qualified individuals. (D. App. p. 2). It offers the option to participate in health insurance to adjunct faculty members who have been employed to teach at least one credit course in each regular fall and spring semester for the preceding three academic years, and who have been scheduled to teach a minimum of twelve semester credit hours in an academic year of coverage. (D. App. pp. 2, 7). There are no individuals employed by the DCCCD as adjunct faculty, solely teaching non-credit courses, who are receiving health insurance through DCCCD, unless they meet the eligibility requirements above or are eligible through their service for the district in some other capacity. (D. App. p. 2).

Pursuant to IRS Regulations, DCCCD also requires all its employees to participate in an approved retirement plan. *Id.* Full-time employees must participate in the Teachers Retirement System ("TRS") program or, if eligible, in the Optional Retirement Program ("ORP"). *Id.* Part-time or adjunct employees may participate in Social Security/FICA or the alternative retirement program, a 403-b plan. *Id.* All employees, unless exempted, participate in one of the retirement options. (D. App. pp. 2-3).

DCCCD records show that Plaintiff taught two sections of credit courses at Brookhaven College from September 6, 2000, through October 16, 2000; she has not taught any credit courses since then, either at Brookhaven or Richland College. (D. App. pp. 1, 3). Upon both her initial and subsequent employment with the DCCCD, Plaintiff selected Social Security (FICA option) as her retirement plan. (D. App. p. 3). Plaintiff did not meet the eligibility requirements for health insurance as an adjunct faculty member. *Id.* Additionally, since she remained adjunct faculty throughout her employment with DCCCD, the criteria for health insurance eligibility under any other employee classifications did not apply to her. *Id.*

With respect to her discrimination and retaliation claims, Plaintiff alleges that because she works over 30 hours a week, she is a full-time employee eligible for health insurance and TRS/ORP retirement benefits. (*See* doc. 1, pp. ID. 16-17; D. App. p. 12). She also alleges that DCCCD has not offered her health insurance and TRS/ORP retirement benefits although it offers them to other continuing education faculty members, including Jasmina Fahrendorff, Daniel Cerrato, Anna Hood, Babs King, and Dona Trelles. (*See* doc. 1, pp. ID. 16-17; D. App. pp. 3, 12, 14-18). She claims that the retaliation occurred because she raised issues of discriminatory practices. *See id.* She further claims that her "religion, national origin, and her informing DCCCD about her intent to file a discrimination complaint were at least motivating factors" in denying her the disputed employment benefits. (*See* doc. 1, p. ID. 17). In support of her intentional infliction of emotional distress claim, Plaintiff alleges that DCCCD's agents engaged in harassing conduct towards her. (*See* doc. 1, pp. ID. 17-20; doc. 5, p. ID. 44). Among other things, she seeks exemplary damages from DCCCD.

Defendant filed this motion for summary judgment on March 19, 2008, arguing that it is entitled to summary judgment on all of Plaintiff's claims. The parties filed the respective response and reply within the applicable deadlines, and the motion is now ripe for consideration.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court

of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However,

the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

### III. EVIDENTIARY CONSIDERATIONS

Plaintiff objects to DCCCD's use of her deposition on grounds that it is fake and that she never "sign[ed] the papers and agreed that it was correct." Rule 30 contains no general requirement that a deposition transcript be signed by the deponent in order for the deposition to be admissible. Signature of the deponent is required only if, within thirty days of being notified by the officer that a transcript or recording is available, the deponent makes a request to review the transcript and changes are made. Fed. R. Civ. P. 30(e) Advisory Committee Note, 1993 Amendments; *Blackman v. City of Dallas*, 33 F.App'x 704, 704 (5th Cir. 2002). Plaintiff does not provide evidence that she made such a request within the requisite thirty-day period or that she timely returned the deposition with properly executed changes. Her objection is therefore **OVERRULED**.

### IV. NATIONAL ORIGIN AND RELIGIOUS DISCRIMINATION CLAIMS

Defendant moves for summary judgment on Plaintiff's national origin and religious discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code §§ 20.001 *et seq.* (Mot. Br. at 5). Plaintiff's discrimination claim is based on allegations that DCCCD denied her

health insurance and TRS/ORP benefits. (*See* doc. 1, pp. ID. 16-17; D. App. p. 12).

### A. Analytical Framework

Title VII and the TCHRA prohibit an employer from discriminating against an individual with respect to the compensation, terms, conditions, or privileges of her employment based on her national origin or religion. *See* 42 U.S.C. § 2000e-2(a)(1); Tex. Lab. Code Ann. § 21.051 (Vernon 2006). Discrimination claims under Title VII and the TCHRA are analyzed under the well-established burden shifting framework. *See Evans v. City of Houston*, 246 F.3d 344, 349 (5th Cir. 2001); *Daly v. Home Depot U.S.A. Inc.*, 2007 WL 4260900, at *3 (W.D. Tex. Dec. 3, 2007). Under that framework, a plaintiff alleging intentional discrimination must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005). Where, as here, there is no direct evidence or statistical proof of discrimination, a plaintiff may establish a *prima facie* case through the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Under the test established in *McDonnell Douglas*, a plaintiff must show that she (1) belongs to a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

If the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination" arises. *Lee*, 574 F.3d at 259. The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Okoye v. Univ. of Texas Houston Health Science Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (citing *Reeves v. Sanderson*

7

*Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)). Once the defendant has met its burden of production and responded with a legitimate, non-discriminatory reason for the employment action,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998). Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that the protected characteristic was a motivating factor for the employment practice. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003). DCCCD argues that it is entitled to summary judgment on Plaintiff's national origin and religious discrimination claims at every step of the burden shifting framework. (Mot. Br. at 6-11).

**B.    Prima Facie Case**

DCCCD argues that Plaintiff cannot establish the third and fourth prong of her prima facie case – that she suffered an adverse employment action, and that she was treated differently than similarly situated employees. (Mot. Br. at 7-10).

**1. Adverse Action**

DCCCD argues that Plaintiff suffered no adverse action because she was never eligible for health insurance and TRS/ORP benefits. (Mot. Br. at 7). The Fifth Circuit has held that an adverse action necessary to state a *prima facie* case of racial discrimination under Title VII includes "only

8

ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."[2] *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Denial of health insurance benefits to an employee constitutes an adverse employment action necessary to state a prima *facie case* of discrimination. *See E.E.O.C. v. Dunbar Diagnostic Servs. Inc.*, 92 F.App'x 83, 83 (5th Cir. 2004); *Lewis v. K2 Indus. Servs., Inc.*, 2007 WL 3442189, at *6 (M.D. Ala. Nov. 14, 2007). Similarly, denial of retirement benefits to an employee is considered an adverse employment action. *See Horth v. Gen. Dynamics Land Sys.*, 960 F. Supp. 873, 877 n.7 (M.D. Pa. 1997) (since employee alleged that employer had declared him ineligible for early retirement benefits, employee had demonstrated an adverse employment action). Here, Plaintiff has alleged that DCCCD denied her health insurance and retirement benefits. Viewing the facts in the light most favorable to Plaintiff, DCCCD has failed to meet its summary judgment burden to show that there is no genuine issue of material fact as to the adverse action element of Plaintiff's prima facie case.

### 2. Treated Differently than Similarly Situated Employees

DCCCD also argues that Plaintiff cannot establish she was treated differently than similarly situated employees and therefore cannot establish a prima facie case of discrimination. (Mot. Br. at 8). In order to establish a *prima facie* case of discrimination, an employee alleging discrimination must also show that she was treated differently than similarly situated employees. *Lee*, 574 F.3d at 259. "An employee who proffers a fellow employee as a comparator must demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Id.* at 259-60

---

[2] Although the Fifth Circuit has questioned whether this formulation comports with the Supreme Court's standard for Title VII cases in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), it has held that the Supreme Court expressly abrogated the "ultimate employment test" in only Title VII retaliation cases, and that the test still applies to cases alleging discrimination. *See McCoy*, 492 F.3d at 559-60; *Bouvier v. Northrup Grumman ship*, 350 F.App'x 917, 922 n. 1 (5th Cir. 2009); *McKay v. Johanns*, 265 F.App'x 267, 268 (5th Cir. 2008).

(quoting *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable employment histories." *Lee*, 574 F.3d at 260 (citing *Okoye*, 245 F.3d at 514).

At issue here is whether DCCCD treated Plaintiff differently than the allegedly similarly-situated employees, Fahrendorff, Cerrato, Hood, King, and Trelles. (*See* D. App. at 14-18). DCCCD provides evidence that Fahrendorff, Cerrato, and Hood are not receiving and never have been offered or received health insurance or retirement benefits through DCCCD's employee benefits program. (Mot. Br. at 8, citing D. App. p. 3). DCCCD also provides evidence that King and Trelles are eligible to participate in the benefits program through other roles with the DCCCD; King is a DCCCD retiree who is receiving benefits due to her role as a full-time professional support staff member, and Trelles is eligible for benefits through her continued role as a faculty member in the credit program. *Id.* DCCCD also points to Plaintiff's deposition testimony that she has no direct evidence whether any of these individuals were receiving health insurance or retirement benefits from DCCCD. (Mot. Br. at 8, citing D. App. p. 14). Because DCCCD has proffered evidence showing that Plaintiff was not treated differently than similarly-situated employees, it has met its summary judgment burden.

The burden now shifts to Plaintiff to identify evidence in the record raising a genuine issue of material fact that DCCCD treated her differently than similarly situated employees. Plaintiff does not direct the Court's attention to any competent summary judgment evidence sufficient for a reasonable jury to conclude that she was treated differently than similarly situated employees. She

therefore has failed to meet her summary judgment burden.

Since there is no genuine issue of material fact on at least one element of Plaintiff's *prima facie* case for discrimination, DCCCD is entitled to summary judgment on her national origin and religious discrimination claims under Title VII and the TCHRA.

**B.     Legitimate Non-Discriminatory Reason**

Assuming that Plaintiff established a prima facie case of discrimination, DCCCD proffers evidence showing that it had a legitimate, non-discriminatory reason for denying her the disputed benefits. (Mot. Br. at 9-10). If an employee alleging discrimination establishes a prima facie case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The employer's proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory. *See Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).

DCCCD argues that Plaintiff was denied access to health insurance and TRS/ORP benefits because she was not eligible to receive them. (Mot. Br. at 9-10). DCCCD points to affidavit testimony of Dawn Segroves, its Associate Director of Human Resources, to show that Plaintiff, as an adjunct faculty member, did not meet the eligibility requirements for health insurance or TRS/ORP retirement benefits. (Mot. Br. at 7, citing D. App. pp. 2-3). To be eligible for health insurance benefits, DCCCD's adjunct faculty members must be employed to teach at least one credit course in each regular fall and spring semester for the preceding three academic years, and must be scheduled to teach a minimum of twelve semester credit hours in an academic year of coverage. (D. App. pp. 2, 7). DCCCD's evidence shows that Plaintiff taught credit courses only during the fall semester in 2000. (D. App. p. 3).

11

To be eligible for TRS/ORP retirement benefits, a DCCCD faculty member has to be a full-time employee. (D. App. p. 2). DCCCD's evidence shows that except for the fall semester in 2000, Plaintiff has taught only non-credit courses during her employment with DCCCD, and non-credit courses do not count towards full-time employee status. (D. App. pp. 1-3). Since DCCCD has proffered evidence showing that Plaintiff did not meet the eligibility requirements for the disputed benefits, it has met its burden of production to provide a legitimate non-discriminatory reason for not providing Plaintiff access to the disputed benefits. The burden now shifts to Plaintiff to offer evidence sufficient to create a genuine issue of material fact that DCCCD's proffered reasons are a pretext for discrimination, or that her religion or national origin was a motivating factor in its decision to deny her the disputed benefits.

**C.      Pretext/Mixed Motives**

Plaintiff relies on an on an internet "handbook" on DCCCD's policy, allegedly signed by Segroves, to show that she is a full-time employee eligible for the disputed benefits. She does not, however, attach the handbook as evidence, and does not make a coherent argument as to why she was a full-time employee or why she was eligible for the benefits at issue. Additionally, Plaintiff relies only on conjecture, speculation, and conclusory and unsubstantiated assertions,[3] to show that DCCCD discriminated against her based on her religion and national origin. Conclusory or unsubstantiated assertions are not competent summary judgment evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007); *Duffie v. United States*, 600 F.3d 362, 371

---

[3] In her response, Plaintiff makes several factual assertions to show that DCCCD discriminated against her. However, her factual allegations appear to be based on conjecture and speculation, and are neither sworn nor substantiated by competent summary judgment evidence. A non-movant's summary judgment burden is not satisfied by unsubstantiated assertions; she must identify specific evidence in the record and articulate the precise manner in which that evidence supports her claim. *See Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

12

(5th Cir. 2010). Likewise, Plaintiff's subjective belief of discrimination alone, no matter how sincere, is not enough to survive a summary judgment motion in the face of proof showing an adequate non-discriminatory reason. *Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996); *Salinas v. AT&T Corp.*, 314 F.App'x 696, 699 (5th Cir. 2009). DCCCD is entitled to summary judgment on Plaintiff's national origin and religious discrimination claims under Title VII and the TCHRA on this basis as well.

In short, summary judgment should be **GRANTED** in Defendant's favor with respect To Plaintiff's national origin and religious discrimination claims under Title VII and the TCHRA.

## V. RETALIATION CLAIM

DCCCD also moves for summary judgment on Plaintiff's retaliation claim under Title VII and the TCHRA. (Mot. Br. at 11-14). Plaintiff's retaliation claim, like her discrimination claim is based on DCCCD denying her health insurance and TRS/ORP retirement benefits. (*See* doc. 1, pp. ID. 16-17; D. App. p. 12).

### A. Analytical Framework

Retaliation claims under the TCHRA are guided by the burden-shifting framework applicable to retaliation claims under Title VII. *See Shackleford v. Deloitte &Touche, LLP*, 190 F.3d 398, 404 n. 2 (5th Cir. 1999); *Martin v. J.A.M. Distrib. Co.*, 674 F. Supp.2d 822, 843 n. 8 (E.D. Tex. 2009). A plaintiff must first establish a *prima facie* case of retaliation by showing that (1) he participated in activity protected by Title VII, (2) he suffered an adverse employment action, and (3) a causal connection existed between his protected activity and the adverse employment action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). If the plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to the employer to articulate a legitimate, non-

13

retaliatory reason for its employment action. *McCoy*, 492 F.3d at 556. If the employer meets its burden of production, Plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the employer's reason is not true, but is instead a pretext for retaliation, or (2) that the employer's reason, while true, is only one of the reasons for its conduct and another motivating factor is the plaintiff's protected activity. *See Rachid*, 376 F.3d at 312; *Cothran v. Potter*, 2010 WL 1062564, at *5 (N.D. Tex. Mar. 22, 2010).

**B.     Prima Facie Case**

DCCCD first argues that Plaintiff cannot establish all three elements of her prima facie case for retaliation – that she participated in a protected activity, that the DCCCD took an adverse employment action against her, and that a causal connection existed between a protected activity and an adverse employment action. (Mot. Br. at 12-14).

**1. Protected Activity**

"Protected activity is opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2000) (citation and internal quotation marks omitted); *See also* 42 U.S.C. § 2000e-3(a).

Plaintiff alleged in her complaint that the retaliatory acts occurred after she raised issues of discriminatory practices with the DCCCD. When asked to elaborate, Plaintiff testified during her deposition that the protected activity occurred in 2004 when she had a dispute with DCCCD for not receiving payments under her contracts. (Mot. Br. at 12-13, citing D. App. p. 13). DCCCD correctly asserts in its motion for summary judgment that a dispute over contract payments is not protected activity under Title VII. An employee's efforts to vindicate contract rights do not

14

constitute protected activity under Title VII when the rights are not based on her protected characteristic. *See Winchester v. Galveston Yacht Basin*, 119 F.3d 1, 3 (5th Cir. 1997). DCCCD has met its summary judgment burden.

The burden now shifts to Plaintiff to identify evidence in the record sufficient for a reasonable jury to conclude that she engaged in protected activity. Plaintiff asserts in her response, and there is evidence in the record, that she filed a discrimination charge against DCCCD with the Equal Employment Opportunity Commission ("EEOC"). (*See* doc 1, p.ID. 16; doc. 6, pp. ID. 50-51). An EEOC charge against an employer does qualify as a protected activity. *See* 42 U.S.C. § 2000e-3(a); *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 995 (5th Cir. 2005). Plaintiff has met her summary judgment burden to raise a genuine issue of material fact that she engaged in protected activity under Title VII.

### 2. Adverse Action

DCCCD argues that the denial of health insurance and TRS/ORP retirement benefits to Plaintiff does not constitute an adverse action because Plaintiff was not entitled to such benefits under DCCCD's employment policy. (Mot. Br. at 13, citing D. App. pp. 2-3). "To constitute prohibited retaliation, an employment action must be materially adverse, one that would dissuade a reasonable worker from making or supporting a charge of discrimination." *Stewart*, 586 F.3d at 331 (citing *Burlington N. &Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2007)) (internal quotation marks omitted). "The significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Burlington N.*, 548 U.S. at 69; *See also Stewart*, 586 F.3d at 332-33.

Here, DCCCD denied Plaintiff health insurance and retirement benefits. As discussed above,

15

denial of health insurance and retirement benefits to an employee constitutes an adverse action necessary to establish a prima facie case of discrimination. DCCCD therefore has failed to meet its summary judgment burden to show that there is no genuine material fact issue as to the adverse action element of Plaintiff's *prima facie* case.

### 3. Causal Connection

DCCCD also asserts that there is no evidence of a causal link between a protected activity and an adverse employment action. (Mot. Br. at 13-14). A plaintiff can establish a causal link by showing that the employer's adverse action "was based in part on knowledge of the employee's protected activity." *Manthos v. Jefferson Parish*; 353 F.App'x 914, 919 (5th Cir. 2009); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001); *Sherrod v. Am. Airlines Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). "The proffered evidence must be sufficient to permit a reasonable fact finder to conclude that the decision-maker had actual knowledge of the protected activity." *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 454-55 (5th Cir. 2007). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make a prima facie case of retaliation." *McCoy*, 492 F.3d at 562.

Where, as here, the non-movant bears the burden of proof, the movant's burden may be discharged by pointing out to the Court that there is an absence of evidence to support the non-movant's case. *Celotex*, 477 U.S. at 325. To defeat the motion for summary judgment, the non-movant must then direct the Court's attention to facts that support all the essential elements of his claim. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001). "[I]f the non-movant fails to present sufficient facts to support an essential element of his claim, summary judgment is appropriate." *Id.* (citing *Celotex*, 477 U.S. at 322-23). Here, Plaintiff only makes conclusory

assertions that DCCCD retaliated against her; she does not identify record evidence showing that the denial of the disputed benefits occurred after, or was based in part on knowledge of, an EEOC filing. She has therefore failed to meet her burden.

Since there is no genuine issue of material fact as to at least one element of Plaintiff's *prima facie* case for retaliation, DCCCD is entitled to summary judgment on Plaintiff's retaliation claims under Title VII and the TCHRA.

**C.     Legitimate Non-Retaliatory Reason**

DCCCD also argues that Plaintiff was denied access to health insurance and TRS/ORP benefits pursuant to a legitimate non-retaliatory reason. (Mot. Br. at 9-10). DCCCD asserts, based on evidence discussed earlier, that Plaintiff was not eligible to receive the disputed benefits. *See id.* DCCCD has met its burden of production to provide a legitimate non-retaliatory reason for its alleged retaliatory action. The burden now shifts to Plaintiff to offer evidence sufficient to create a genuine issue of material fact that DCCCD's proffered reasons are a pretext for retaliation or that her protected activity was a motivating factor in its decision to deny her the disputed benefits.

**D.     Pretext/Mixed-Motives**

Plaintiff does not direct the Court's attention to evidence in the record creating a genuine issue of material fact that her protected activity was a motivating factor in DCCCD's decision to deny her the disputed benefits, or that DCCCD's proffered reason was a pretext for retaliation. Plaintiff's unsubstantiated factual allegations and her subjective belief of retaliation are not sufficient to withstand a motion for summary judgment in the face of evidence showing a legitimate non-retaliatory motive for the alleged actions.

In sum, summary judgment should be **GRANTED** in favor of DCCCD with respect to

17

Plaintiff's retaliation claim under Title VII and the TCHRA.

## VI. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

DCCCD moves for summary judgment on Plaintiff's state law claim for intentional infliction of emotional distress on grounds of governmental immunity. (Mot. Br. at 15-16). Plaintiff's intentional infliction of emotional distress claim is based on allegations that DCCCD's agents made fun of Plaintiff when she approached them with questions, subjected her to multiple open derogatory remarks about her national origin, lowered room temperatures knowing that it would cause her double pneumonia, intentionally decreased her class registration by telling students that her classes were full, and instructed her not to come to the registration department while not imposing such restrictions on similarly situated employees. (*See* doc. 1, pp. ID. 17-20). DCCCD asserts that, as a political subdivision of the state, and as a junior college district, it is immune from any intentional tort claims under Texas law, including Plaintiff's claim for intentional infliction of emotional distress. (Mot. Br. at 15-16).

Because Plaintiff's intentional infliction of emotion distress arises under state law, the Court must first decide whether to retain supplemental jurisdiction over it. *See* U.S.C. § 1367(a). A district court generally declines to exercise supplemental jurisdiction over any pendent state law claims if it has dismissed all the claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(2); *Priester v. Lowndes County*, 354 F.3d 414, 425 (5th Cir. 2004). However, considerations such as judicial economy, convenience, fairness, and comity may compel a court to exercise jurisdiction over any remaining pendent claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). In this case, it would be in the interest of judicial economy and convenience to exercise supplemental jurisdiction

18

over Plaintiff's claim for intentional infliction of emotional distress because the claim is intertwined with Plaintiff's other claims, and the Court exercises its discretion to do so.

A political subdivision of the state of Texas is liable for the acts or conduct of its employees only if its common law immunity is waived by the Texas Tort Claims Act ("TTCA"). *See McIntosh v. Partridge*, 540 F.3d 315, 321 n. 3 (5th Cir. 2008); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). The TTCA waives governmental immunity in three general areas: "use of publicly owned vehicles, premises defects, and injuries arising from conditions or use of property." *Brown v. Montgomery County Hosp. Dist.*, 905 S.W.2d 481, 484 (Tex. App. – Beaumont. 1995); *See also* Tex. Civ. Prac. & Rem. Code § 101.021. For junior college districts, however, the TTCA waives governmental immunity only for negligence claims arising out of the operation of motor vehicles. *See* Tex. Civ. Prac. & Rem. Code § 101.021. Additionally, governmental immunity is not waived for intentional torts. *See* Tex. Civ. Prac. & Rem. Code § 101.057(2); *Fields v. Dallas County Schs.*, 2007 WL 836863, at * 2 (N.D. Tex. Mar. 15, 2007).

Here, Plaintiff has brought a claim for intentional infliction of emotional distress against DCCCD, a junior college district. Plaintiff can only assert negligence claims arising out of the operation of motor vehicles against a junior college district. Additionally, DCCCD, as a governmental entity, is immune from any intentional tort claims. Accordingly, summary judgment should be **GRANTED** in DCCCD's favor as a matter of law with respect to this claim.

## VII.  REQUEST FOR EXEMPLARY DAMAGES

DCCCD moves the Court to dismiss Plaintiff's request for exemplary damages against it. (Mot. Br. at 16-17). Plaintiff is not entitled to exemplary damages against DCCCD under Title VII because exemplary damages under Title VII are not recoverable against a political subdivision of

the state. *See* 42 U.S.C. § 1981a(b)(1); *Turman v. Greenville Indep. Sch. Dist.*, 2005 WL 659017, at *6 (N.D. Tex. Jan. 27, 2004). Similarly, Plaintiff is not entitled to exemplary damages under her TCHRA claims or under her claim for intentional infliction of emotional distress. The Texas labor Code and the TTCA do not allow exemplary damages against a governmental entity. *See* Tex. Lab. Code § 25.2585(b); Tex. Civ. Prac. & Rem. Code § 101.024. Plaintiff's request for exemplary damages should be **DISMISSED**.

## VIII.  CONCLUSION

*Defendant's Motion for Summary Judgment* should be **GRANTED** with respect to all of Plaintiff's claims.

**SO RECOMMENDED** on this 11th day of May, 2010.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE